SECOND DIVISION

August 17, 2004

No. 1-00-3531 

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )               

)

AUDREY A. KLIMAWICZE,   ) Honorable

) James D. Egan,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court: 

Following a jury trial, defendant Audrey Klimawicze was convicted of first degree murder, armed robbery, and home invasion.  The trial court sentenced her to an extended term of 92 years' imprisonment for murder and two concurrent 30-year sentences for the remaining counts of armed robbery and home invasion.  On appeal, defendant challenged the legality of her arrest and the admission of her subsequent hand-written statement at trial.  This court found the police lacked probable cause to justify defendant's arrest and remanded the matter to the trial court for an attenuation hearing.  
People v. Klimawicze
, No. 1-00-3531 (2003) (unpublished order pursuant to Supreme Court Rule 23).  Following our instructions, the trial court made several factual findings and concluded defendant's statement was sufficiently attenuated from her illegal arrest.

In addition to appealing the trial court's finding regarding attenuation, defendant contends:  (1) the trial court violated defendant's right to confront witnesses by allowing hearsay statements into evidence; (2) jury selection was fundamentally unfair because the State falsely educated the jury on the law of accountability during 
voir
 
dire
; (3) the prosecution improperly questioned defense witnesses about defendant's prior bad acts; (4) the prosecution improperly used prior consistent statements to bolster its witness's credibility; (5) the prosecution improperly asked defendant to comment on other witnesses' truthfulness; (6) the trial court erred when it refused to instruct the jury on second degree murder; and (7) defendant's 92-year sentence was unfairly disproportionate.  We affirm defendant's conviction and sentences.

FACTS

We rely on the trial court's factual findings at the attenuation hearing.  They are supported by the record.  

The Chicago police found the partially burned body of Audrey V. Klimawicze on August 2, 1997, in a garbage container located in the alley of the 3300 block of South Emerald Avenue.  The victim had been stabbed and strangled.  At 7:05 that evening, the police arrested defendant, who was the victim's daughter, and codefendant Hector Mercado.
(footnote: 1)
 Police questioned both defendant and codefendant Mercado at 9:30 p.m. on August 2, 1997, and they denied any knowledge of the crime.  At 10 p.m., an eyewitness identified Mercado in a lineup as the man she saw pushing the garbage cart down the alley the previous evening.  At 12:30 a.m. on August 3, 1997, police told Mercado he had been identified in the lineup.  Mercado told police that defendant told him she had a fight with her mother and that she had stabbed her.  Defendant and a man named Mario placed the victim in a garbage can behind her apartment building.  Mercado admitted he later moved the can further down the alley.

At 4 a.m. on August 3, 1997, taxi driver Joe Martinez told police he drove defendant and Mercado on August 2, 1997.  Defendant told Martinez she had an argument with her mother and had stabbed her.  According to Martinez, defendant said, "The bitch deserved it," and Mercado replied, "You're right.  She deserved it.  They can't prove a thing."

At 4:30 a.m., police advised defendant of her Miranda rights and confronted her with Mercado's and Martinez's statements.  She told police she had an argument with her mother and that her mother pulled a knife on her.  Defendant was able to take the knife away.  When she told Mercado what happened, he took the knife, went to the victim's apartment, and stabbed her.  According to defendant, Mercado placed her mother's body in the garbage container.  Defendant gave the same version of the story when interviewed by police three hours later.

At 8:30 a.m., Mercado repeated his 12:30 a.m. statement.  The police again confronted defendant with Mercado's and Martinez's statements.  She gave the same statement as earlier and agreed to repeat her statement to Mercado.  

After listening to defendant, Mercado told police defendant had talked about killing her mother for three weeks.  At 10:30 p.m. on July 31, 1997, defendant asked Mercado to accompany her to her mother's apartment so they could kill her.  Mercado told police he refused but went down to the second floor apartment when he heard a loud noise.  He saw defendant stab her mother with a large knife several times.  Over the next 20 hours, he used money defendant found in the victim's apartment to buy heroin.  On August 1, 1997, he placed the victim in the garbage container and later pushed it down the alley.

Police then confronted defendant with Mercado's latest statement.  Defendant repeated her earlier statements.  At 4 p.m. defendant initiated a conversation with police.  She reiterated her earlier statement but added Mercado did not return to their apartment on the night of August 1, 1997.  On the morning of August 2, 1997, Mercado told defendant he had burned the garbage cart and police were investigating.

At 7:30 p.m. on August 3, 1997, defendant, after being informed of her rights, gave the same statement to assistant State's Attorney Thomas Bilyk.

An hour later, Mercado gave Bilyk a different story.  He said defendant told him she was going "to do" her mother.  Defendant returned because her mother would not let her enter the apartment.  Defendant then took a long black cord and Mercado took a hunting knife to the victim's apartment.  Defendant kicked her mother and forced her way into the apartment.  Mercado followed.  Defendant then strangled the victim with the cord and instructed Mercado to stab her.  He stabbed the victim three times while defendant continued to choke her.  After taking money from the victim's apartment, they went to the projects to buy heroin and dispose of their weapons.  The next day, Mercado placed the victim and a carpet into a garbage container from the alley.  Later, they moved the container to the alley and set it on fire.  He also said defendant told the cabdriver named Joe that she killed her mother.

At 9:15 p.m., defendant was confronted with Mercado's 8:30 p.m. statement.  She expressed disbelief that Mercado made the statement; the police brought him into defendant's interview room.  He told defendant, "I told them the truth."  Police escorted him from the room, and Bilyk informed defendant of her rights.  She agreed to give a handwritten statement, which was later admitted at trial.

The testimony at trial, including the contents of defendant's handwritten statement, was summarized in our previous order.  See 
Klimawicze
, No. 1-00-3531 (2003).  The jury found defendant guilty of first degree murder, armed robbery, and home invasion.

Defendant waived her right to a jury trial to determine her eligibility for the death penalty.  At sentencing, the court heard evidence in mitigation and aggravation and determined defendant and Mercado were eligible for the death penalty because the murder occurred during an armed robbery.  Based on the mitigating evidence, the court declined to impose the death penalty.  The court also considered imposing life sentences, saying a life sentence "seems to be awfully appropriate."  Instead, the court sentenced both defendants to 92-years' imprisonment based on the brutal nature of the murder.  The court also imposed two concurrent 30-year terms for the armed robbery and home invasion convictions.

DECISION

I.  Attenuation analysis 

Defendant contends the trial court erred when it found her statement was attenuated from her illegal arrest.

Evidence collected following an illegal arrest may be admissible if it is sufficiently attenuated from any illegality.  
Brown v. Illinois
, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62 (1975).  Courts use four factors in attenuation analysis: (1) the existence of 
Miranda
 warnings; (2) the proximity in time between the arrest and the statement; (3) the presence of intervening circumstances; and (4) the flagrancy of police misconduct.  
Brown
, 422 U.S. at 603-04, 45 L. Ed. 2d at 427, 95 S. Ct. at 2261-62; 
Wilberton
, 348 Ill. App. 3d 82, 85, 809 N.E.2d 745 (2004).  Typically, intervening circumstances and flagrancy of police misconduct are the two key factors in determining whether police exploited the illegal arrest to obtain a confession.  
People v. Willis
, 344 Ill. App. 3d 868, 884-85, 801 N.E.2d 47 (2003), 
pet. for leave to appeal granted,
 207 Ill. 2d 627, 807 N.E.2d
 981 (2004); 
People v. Ollie
, 333 Ill. App. 3d 971, 986, 777 N.E.2d
 529 (2002).  The prosecution bears the burden of showing the confession was not a product of the illegal arrest.  
People v. Foskey
, 136 Ill. 2d 66, 86, 554 N.E.2d
 192 (1990).

A trial court's decision regarding a motion to suppress evidence is reviewed 
de
 
novo
; however, great deference is given to the trial court's factual findings, which will not be reversed unless they are found to be against the manifest weight of the evidence.  
People v. Pitman
, No. 95783 (Ill. June 17, 2004).

A.  
Miranda
 warnings

Courts have held that the presence of 
Miranda
 warnings alone will not purge the taint of an illegal arrest.  
Wilberton
, 348 Ill. App. 3d at 85.  "Although police cannot dissipate the taint of an illegal arrest simply by giving 
Miranda
 warnings, the presence of the warnings prior to interrogation carries some weight."  
Wilberton
, 348 Ill. App. 3d at 85 (this factor weighed in favor of attenuation where the defendant waived his rights six times).  In this case, the trial court found defendant was given the 
Miranda
 warnings each time police questioned her.  She waived those rights seven times.  We agree with the trial court that this factor weighs in favor of attenuation. 

B.  Proximity in time between arrest and confession

The length of time between the illegal arrest and a confession is an ambiguous attenuation factor.  

"[W]here intervening circumstances are present, a long period between arrest and confession may support the inference that it was the intervening circumstance, and not the illegal arrest, which prompted the confession.  However where no intervening circumstances are present, a long and illegal detention may in itself impel the defendant to confess."  
People v. White
, 117 Ill. 2d 194, 224, 512 N.E.2d
 677 (1987).  

In this case, we cannot determine whether the 27-hour period between defendant's arrest and her handwritten statement favors attenuation without determining whether there were intervening circumstances.

C.  Intervening circumstances

Intervening circumstances are an important factor in attenuation because they break the causal connection between unconstitutional police conduct and a confession.  
Wilberton
, 348 Ill. App. 3d at 85-86.  "Intervening circumstances support attenuation when they are capable of inducing a voluntary desire to confess."  
Wilberton
, 348 Ill. App. 3d at 86; 
People v. Austin
, 293 Ill. App. 3d 784, 788, 688 N.E.2d
 740 (2000).

In this case, the court found Mercado's and Martinez's statements, which occurred before all but one of defendant's statements, were intervening circumstances for two reasons.  First, the statements provided the police with probable cause they previously lacked to arrest defendant.  Second, the statements "sparked the desire of the defendant to confess voluntarily."

1.  Intervening probable cause

"Intervening acquisition of probable cause is 'an important factor in the attenuation analysis' even though it does not always assure the police did not exploit a Fourth Amendment violation."  
Wilberton
, 348 Ill. App. 3d at 87, quoting 
People v. Morris
, 209 Ill. 2d 137, 158, 809 N.E.2d
 377 (2004) 
overruled in part
, 
Pitman
, No. 95783, slip op. at 8 (overruled 
Morris
 to the extent it was inconsistent with the standard of review set forth in 
Ornelas v. United States
, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1999)).  In 
Morris
, our supreme court explained why intervening probable cause weighs heavily in favor of attenuation, rather than application of the exclusionary rule:  "[I]t would place an unreasonable burden on police *** to release an illegally arrested defendant and then, based on probable cause obtained after the illegal arrest, arrest him again when he reached the sidewalk."  
Morris
, 209 Ill. 2d at 159.

A codefendant's statement can constitute intervening probable cause and serve as an attenuating circumstance if it is legally obtained and reliable.  
Wilberton
, 348 Ill. App. 3d at 88; see also 
People v. James
, 118 Ill. 2d 214, 224-26, 514 N.E.2d
 998 (1987) (codefendant's statement, which was found sufficiently reliable, provided probable cause to arrest defendant even though it was illegally obtained).

In this case, Mercado's statement meets both requirements.  Although Mercado challenged his arrest before trial, he was unsuccessful and did not raise the issue again on appeal.  Based on the record, we have no reason to doubt the legality of Mercado's arrest.  Second, Mercado's statement was sufficiently reliable.  The details of his statement were corroborated by Martinez's statement and the physical evidence.  Additionally, Mercado's statement was against his penal interest because he admitted helping defendant dispose of the victim's body.  See generally 
James
, 118 Ill. 2d at 223 ("admissions against penal interest may, by their very nature, possess inherent indicia of reliability"). 

While Mercado's statement supports intervening probable cause, we need not rely on it exclusively.  Martinez's statement that defendant admitted stabbing her mother also provides intervening probable cause and weighs in favor of attenuation.

We do not examine the legality of Martinez's detention because defendant failed to sufficiently raise the issue in her brief.  Defendant simply stated Martinez was detained without probable cause without arguing specific facts and applicable law.  Bare contentions lacking sufficient legal argument do not warrant our consideration.  
In re Estate of Divine
, 263 Ill. App. 3d 799, 810, 635 N.E.2d 581 (1994) ("It is an elementary rule of appellate practice that an appellant may not make a point merely by stating it without presenting arguments in support of it.  This court will not research and argue a case for an appellant").  For purposes of this appeal, we assume no error in Martinez's detention.

2.  Confronting defendant with Mercado's and Martinez's statements

"When police confront a defendant in custody with evidence police obtained legally, the evidence may attenuate the connection between an illegal arrest and the defendant's subsequent statements."  
People v. Clay
, No. 1-01-3462, slip op. at 12 (June 21, 2004); 
People v. Jennings
, 296 Ill. App. 3d 761, 766, 695 N.E.2d
 1303 (1998).

In 
Wilberton
, the police confronted defendant with another suspect's statement implicating defendant in a fatal shooting.  The defendant did not challenge the legality of the other suspect's arrest.  This court held the suspect's statement not only gave police probable cause, it served as an intervening circumstance when the police confronted defendant with it.  
Wilberton
, 348 Ill. App. 3d at 89; s
ee also 
People v. Wright
, 294 Ill. App. 3d 606, 613, 691 N.E.2d
 94 (1998) (confronting defendant with his brother's implicating statement served as an intervening circumstance).

In 
Austin
, 293 Ill. App. 3d at 790-91, and 
People v. Beamon
, 255 Ill. App. 3d 63, 70, 572 N.E.2d
 1011 (1993), this court held that confronting a defendant with incriminating statements made against him by others does not serve as an intervening circumstance if those statements were made by someone who also was arrested illegally.

In this case, before defendant gave her second statement at 4:30 a.m. on August 3, 1997, police confronted defendant with two statements by Mercado and Martinez implicating her in the crime.  Unlike 
Austin
 and 
Beamon
, Mercado's and Martinez's statements were not fruits of illegal arrests.  
The trial judge properly found confrontation of defendant with these incriminating statements, rather than her illegal arrest, sparked her desire to voluntarily give a statement.  At that point, neither her statement, nor those of Mercado and Martinez, was tainted by the illegal arrest.  The causal chain was broken, and the police were free to use the statements, including defendant's subsequent statements, in their continuing interrogations.  These additional statements and confrontations by Mercado, which were not tainted by the illegal arrest, became additional intervening circumstances.  Accordingly, this factor weighs in favor of attenuation.

Defendant contends Mercado's and Martinez's statements cannot be considered intervening circumstances because they resulted from defendant's illegal custody.  We find the facts do not support this contention.  

Mercado and defendant gave their first statements to police at 9:30 p.m. on August 2, 1997.  Both denied any knowledge of or involvement in the crime.  Mercado did not incriminate defendant until 12:30 the next morning, after police told him he had been identified in the lineup.  Contrary to defendant's allegation, there is no evidence that police told Mercado about defendant's initial denial to get his 12:30 a.m. statement.  

Instead, we conclude Mercado's 12:30 a.m. statement was the result of police confronting him with his lineup identification, and not defendant's initial denial or the fact Mercado knew defendant was in police custody.   We also disagree with defendant's contention that Martinez's statement was a product of defendant's illegal arrest.  Although defendant contends police would not have independently discovered Martinez absent her statements, this contention is not supported by the facts.  Detective Patrick McDonald testified the police learned Martinez's cab number through defendant's half-sister Bonnie Gentile and her uncle.  Although Gentile testified she did not see defendant leave in a cab, she did see a cab waiting for defendant in front of their apartment building.  Accordingly, we cannot conclude Gentile's testimony disproves McDonald's testimony regarding the source of information about Martinez.  Likewise, we find nothing to support defendant's contention that Martinez knew defendant had been arrested or that he gave his statement to police based on that knowledge.

D.  Flagrancy of police misconduct

The presence of purposeful and flagrant police misconduct weighs against attenuation.  
Wilberton
, 348 Ill. App. 3d at 89.  "Police action is flagrant where the investigation was carried out in such a manner to cause surprise, fear, and confusion, or where it otherwise has a 'quality of purposefulness,' i.e., where the police embark upon a course of illegal conduct in hope that some incriminating evidence (such as the very statement obtained) might be found."  
Jennings
, 296 Ill. App. 3d at 765, citing 
Foskey
, 136 Ill. 2d at 86.

Here, the trial court found no evidence of flagrant police misconduct:

"The police did not mistreat the defendant during her detention and provided food, drink, opportunities to use the bathroom facilities, and she was left alone in the interview room from 11 p.m. to 5 a.m. the next day.  She was not incessantly interrogated and was given plenty of time to ponder her situation."

Nothing in the record persuades us the trial court's finding is against the manifest weight of the evidence.  Defendant contends police misconduct was flagrant in this case because of their method of interrogation, "playing three people *** against one another."  Although the police interrogation strategy was purposeful, we do not believe it was done for the purpose of exploiting illegality.  The first time detectives confronted defendant with Mercado's statement, or Mercado with defendant's statement, occurred after the intervening probable cause arose.  Even before that point, the facts do not suggest police were unreasonable in their belief that they had sufficient probable cause to arrest defendant.  See generally 
Morris
, 209 Ill. 2d at 161-62.

II.  Confrontation Clause

Defendant contends the prosecution violated her Sixth Amendment rights by making numerous references to Martinez's statement to police, especially during Officer Coughlin's testimony.  Officer Coughlin testified about confronting defendant with Martinez's statement and that Martinez told the police defendant had admitted stabbing her mother.

Before Coughlin testified, the State called Martinez as a witness.  Martinez testified that defendant told him she stabbed her mother.  Defense counsel cross-examined Martinez thoroughly regarding the statement he gave police and focused on the circumstances of his interrogation.

Before a testimonial out-of-court statement can be admitted against a criminal defendant, the State must show the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant.  
Crawford v. Washington
, __ U.S. __, 158 L. Ed. 2d 177, 203, 124 S. Ct. 1354, 1374 (2004).

Here, Martinez testified and was cross-examined by defendant's attorney.  We find no Sixth Amendment violation of defendant's confrontation rights with regard to Martinez's testimony.

Next, defendant challenges the prosecution's repeated references to Mercado's multiple statements to police.  At trial, Detective Danzl testified he told defendant that Mercado had given police a "different story".  Both Detective Danzl and assistant State's Attorney Bilyk testified that Mercado was brought into defendant's interview room.  Mercado then told defendant that he had given police "the true story."  Although the substance of Mercado's story was not admitted into evidence, defendant contends she was prejudiced by the State's references to his statements.

Defendant relies heavily on 
Bruton v. United States
, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), to support her contention.  In 
Bruton
, the United States Supreme Court held a criminal defendant's Sixth Amendment right to confront witnesses is violated when a codefendant's incriminating statement is admitted into evidence during a joint trial.  

This case differs from 
Bruton
 in two ways: (1) defendant's and Mercado's jury trials were severed; and (2) the substance of Mercado's statement was not admitted during defendant's trial.  

People v. Fauntleroy
, 224 Ill. App. 3d 140, 147, 586 N.E.2d
 292 (1991)
, is very similar to this case.  In 
Fauntleroy
, the State introduced evidence that a codefendant told the defendant during the course of interrogation, "Tell the truth, I did."  The defendant and codefendant were tried by severed juries and convicted.  On appeal, the defendant contended the codefendant's statement, admitted through the assistant State's Attorney's testimony, violated his Sixth Amendment right to confront witnesses.  This court found no violation under 
Bruton
, because the trials were severed and the substance of codefendant's statement was not admitted.  The court said:

"Illinois cases have repeatedly held that where the substance of a co-defendant's statement is not revealed, an officer may properly testify concerning investigatory procedures, even though the jury can reasonably infer therefrom that the accomplice implicated the defendant. [Citation.]

In rejecting defendant's contention, we recognize that [the codefendant's] statement to [the defendant] 'to tell the truth' is the statement of a non-testifying codefendant which carries with it a strong inference of implication.  We believe, however, that its admission was not error as it was offered for the non-hearsay purpose of showing the jury the circumstances surrounding [the defendant's] confession and the effect [the codefendant's] presence and his 'truth' remark had on [the defendant]."  
Fauntleroy
, 224 Ill. App. 3d at 147.

Defendant contends we should follow 
People v. Campbell
, 115 Ill. App. 3d 631, 450 N.E.2d
 1318 (1983).  In that case, the State introduced evidence that a codefendant implicated the defendant in a robbery.  The defendants' trials were severed and the substance of the codefendant's statement was not used.  The prosecutor argued the jury should infer the codefendant implicated defendant in the crime, because police arrested the defendant shortly after speaking with the codefendant.  The court determined evidence regarding the codefendant's statements to police was used solely for the purpose of convincing the jury to convict on the basis the codefendant implicated the defendant in the crime.  
Campbell
, 115 Ill. App. 3d at 637.

Here, the State had another reason for using Mercado's statements to police:  the prosecution was explaining why defendant decided to confess, thereby bolstering the reliability of her confession.  Following 
Fauntleroy
, we find defendant's Sixth Amendment rights were not violated by the way the State referred to Mercado's statements.

III.  Jury Selection 

Defendant raises three challenges related to 
voir
 
dire
.  First, defendant contends the trial court improperly allowed the State to question potential jurors about the law of accountability and their ability to apply it.  Second, defendant contends the trial court erred by allowing the State to ask the venire members whether they would feel sympathy toward defendant because she was a woman and a mother.  
Third, defendant contends the trial court improperly denied defense counsel's request to question potential jurors about their familiarity with articles on false confessions, which defendant contends would have uncovered any potential bias on the issue of police misconduct.

" 'The purpose of the 
voir
 
dire
 examination is to assure selection of an impartial jury; it is not be used as a means of indoctrinating a jury, or impaneling a jury with a particular predisposition.' "  
People v. Mapp
, 283 Ill. App. 3d 979, 986, 670 N.E.2d
 852 (1996), citing 
People v. Bowel
, 111 Ill. 2d 58, 64, 488 N.E.2d
 995 (1986).  
The scope of questions allowed on 
voir
 
dire
 is left to the trial judge's "broad discretion."  
Mapp
, 283 Ill. App. 3d at 988-89; 
People v. Dow
, 240 Ill. App. 3d 392, 396, 608 N.E.2d
 259 (1992). 

In 
Mapp
, 283 Ill. App. 3d at 899, this court held potential jurors may be given a "brief and fair summary of accountability principles" and asked if they could apply those principles to the case.  The court said such questions served the purpose of 
voir
 
dire
, " 'to discern fundamental bias or misperception of the prospective jurors.' "  
Mapp
, 283 Ill. App. 3d at 899, quoting 
People v. Nunn
, 184 Ill. App. 3d 253, 273, 541 N.E.2d
 182 (1989)
.

We find the trial court did not abuse its discretion by allowing the prosecution to ask jurors, "Do you understand under the law of accountability, that someone may be found accountable or responsible for the actions of another?".  See 
Mapp
, 283 Ill. App. 3d at 989, citing 
Nunn
, 184 Ill. App. 3d at 273 (no error when the court allowed questions which tested the jurors' understanding of the law of accountability).  

Next, defendant contends on appeal the court erred in allowing the prosecution to probe the venire regarding any sympathies they might have towards defendant based on her gender or motherhood.  Defendant contends the question may have "unfairly conveyed the subliminal message that sympathy toward the deceased was acceptable."  Defendant failed to object to this question at trial or in her post-trial motion.  As a result, the issue is waived.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d
 1124 (1988) (an alleged trial error must be raised both at trial and in a posttrial motion or the 
issue is waived).  Waiver aside, we see no danger of the prosecution's question rousing sympathy for the victim, who also was a mother.  

Third, we find the trial court acted within its discretion by preventing the defense from asking the following question during 
voir
 
dire
: "*** has anybody read any articles in the newspaper, a series of articles recently about people that have been convicted of crimes and have given confessions and confessions were later found to be not true?"  This question was directed at the venire's knowledge of newspaper articles discussing false confessions rather than uncovering any bias toward police misconduct.  The trial court did not abuse its discretion by disallowing it.  See 
Mapp
, 283 Ill. App. 3d at 986 (trial court does not abuse discretion by allowing questions that assure any bias would be discovered, but should not allow either side to use 
voir
 
dire
 for the purpose of impaneling a jury with particular predispositions).

IV.  "Prior Bad Acts" Testimony

Defendant contends trial error occurred when the State questioned defendant, her father, and defendant's half-sister about "prior bad acts". The admissibility of evidence is a matter left to the trial court's discretion.  
People v. Illgen
, 145 Ill. 2d 353, 364, 583 N.E.2d
 515 (1991).  The decision to admit evidence will be overturned only if we find an abuse of discretion which manifestly prejudiced the defendant.  
People v. Sutton
, 316 Ill. App. 3d 874, 891, 739 N.E.2d
 543 (2000); 
Illgen
, 145 Ill. 2d at 364; 
People v. Thompkins
, 121 Ill. 2d 401, 441-42, 521 N.E.2d
 38 (1988).

Generally, evidence of prior bad acts is inadmissible unless it is offered for a specific relevant purpose, such as 
modus
 
operandi
, intent, identity, motive, or absence of mistake.  
People v. Maounis
, 309 Ill. App. 3d 155, 159, 722 N.E.2d
 749 (1999).  Courts must weigh the probative value of any evidence against its prejudicial effect.  
Illgen
, 145 Ill. 2d at 365.

Defendant challenges two questions the State asked about her drug purchases: (1) the State cross-examined defendant's father and asked, "And were you aware, sir, that [defendant] and Mercado would go to the projects to buy narcotics?"; and (2) the prosecution asked defendant, "And at that time, you were using public aid money for [your daughter] to buy drugs?"  

The State contends these questions were proper because they established defendant's motive to kill her mother:  her need for money to buy drugs.  In some cases, evidence of the defendant's drug use can be admitted to show motive; however, the State has the burden of showing both that the defendant lacked financial resources and that the defendant was addicted to narcotics.  
Maounis
, 309 Ill. App. 3d at 159.  In 
Maounis
, this court determined the trial court abused its discretion by admitting evidence of the defendant's drug use to establish motive for armed robbery where the State failed to show he needed money or was an addict.  
Maounis
, 309 Ill. App. 3d at 159.  There, the admission of the evidence constituted prejudicial error.

Here, defendant was not prejudiced by the State's questions about her drug use, although neither question should have been asked.  First, the trial court sustained defendant's objection to the question asked of her father, and the witness did not answer the question.  We find no prejudice occurred.  

The second challenged question to defendant is different.  There, defendant did answer the prosecutor's question regarding her use of public aid to buy drugs.  Considering the State had already offered evidence that defendant used the victim's money to buy drugs, the question about her use of public aid was more unfairly prejudicial than probative.  Although we conclude the question was improper, we do not believe it was harmful enough to constitute reversible error.

Defendant also contends she was denied a fair trial when the prosecutor asked her half-sister about prior arguments between defendant and their mother.  When the State called defendant's half-sister Bonnie Gentile as a rebuttal witness, the following exchange occurred:

"[Assistant State's Attorney]: Bonnie, if I can draw your attention to July and August of 1997, had you ever been in your mother and [defendant's] presence when they were arguing?

[Gentile]: Yes

[Assistant State's Attorney]: Were they ordinary arguments?

[Gentile]: No."

At that point, defense counsel objected to use of the word "ordinary", and the court sustained the objection.

The State contends Gentile's questioning was necessary to impeach defendant's testimony as to the substance and severity of the arguments with her mother.  Defendant contends the State improperly used collateral matter to impeach defendant.  

At trial, defendant did not object to the question on the basis of relevancy.  Instead, defense counsel specifically objected to the form of the question.

Although the question was improper, we find no unfair prejudice because the trial court sustained defense counsel's objection.  We conclude the improper questioning did not deprive defendant of a fair trial. 

V.  Improper Cross-Examination of Defendant Regarding Veracity of Other

    Witnesses

Defendant contends the prosecution denied her a fair trial by repeatedly asking defendant about the veracity of the State's witnesses.

"Although asking the defendant's opinion of the veracity of other witnesses has been condemned
 
[citations], the practice generally has not, by itself been held reversible [citation]."  
People v. Nwadiei
, 207 Ill. App. 3d 869, 876, 566 N.E.2d
 470 (1990).  In 
Nwadiei
, the prosecuting attorney asked the defendant 23 questions about the veracity of six of the State's witnesses.  Defense counsel did not object to the questions, and the defendant answered them.  This court found the extensiveness of the improper questioning constituted reversible error.

In this case, the State improperly asked defendant: (1) whether Martinez misheard her or lied about what she told him; (2) whether the assistant State's Attorney "made up" facts about defendant's relationship with her mother; and (3) whether the assistant State's Attorney "made up" parts of defendant's written statement.

Although the prosecuting attorney's questions were improper, they are not so pervasive as to warrant reversal in this case.  Additionally, unlike in 
Nwadiei
, the trial court sustained defense counsel's objections each time the prosecutor asked the offending questions--defendant did not answer.  We do not find reversible error.

VI.  Martinez's Prior Consistent Statements 

Defendant contends the prosecution committed reversible error by questioning Martinez about his prior consistent statements to police, which defendant contends improperly bolstered Martinez's credibility.

Prior consistent statements cannot be used to corroborate a witness's testimony on direct examination, but they can be used to rebut an inference that the witness's testimony was recently fabricated or the witness was motivated to testify falsely if the inference arose 
after
 the consistent statements were made.  
People v. Williams
, 147 Ill. 2d 173, 227, 588 N.E.2d 983 (1991).

In this case, both parties questioned Martinez about the statements he made to police.  On direct, Martinez's testimony included detailed facts which, as defense counsel pointed out through cross-examination, were not included in his written statement to police. 

On redirect examination, the State asked Martinez about some of the oral statements he made to police officers, but none of these questions covered the damaging statements the defendant purportedly made about the killing of her mother.

The State also asked Martinez if his testimony was the same as his prior statements, and the court sustained all but one of defense counsel's objections.  The following question was allowed:

"[Assistant State's Attorney]: You have never changed the story you have told to the police from the beginning right?

[Martinez]: Right.

[Defense counsel]: Objection.

***

 [The Court]: *** I will allow the answer to stand.   Let's proceed."

Martinez testified the police detectives several times told him they were going to charge him as an "accessory after the fact," which Martinez understood to mean he would be put in jail.  However, Martinez never specified when he was threatened.  Was it before his oral statement or after his oral statement but before the written statement?  We cannot tell.  He did say that after making his statement, the police did not charge him with a crime or take away his taxi.  

Based on this record, we cannot say whether Martinez's alleged motive to fabricate his testimony--police coercion--occurred before, during or after his oral statement to police.  The oral statement was the first statement he gave and is the statement the State used to rehabilitate Martinez after cross-examination.  Even if police threatened to charge Martinez with a crime before he made his statements, any error was harmless beyond a reasonable doubt.  See 
People v. Ashford
, 121 Ill. 2d 55, 71-72, 520 N.E.2d 332 (1988) (in the absence of any promise of leniency, the statement at most showed a desire to be released from custody; admission of prior consistent statements was harmless error and did not warrant reversal).
 

VII.  Jury Instruction on Second Degree Murder

Defendant contends the trial court erred by denying her request to give the jury an instruction on second degree murder.

Although jury instructions are left to the trial court's discretion, the court abuses its discretion if there is some evidence to support the instruction and the court fails to give it.
  
People v. Castillo
, 188 Ill. 2d 536, 540, 723 N.E.2d 274 (2000).
  A defendant is entitled to a jury instruction on a lesser offense if there is "slight" evidence to support it, even though defendant's own testimony contradicts it.  
Castillo
, 188 Ill. 2d at 540; 
People v. Jefferson
, 257 Ill. App. 3d 258, 265, 628 N.E.2d 925 (1993)
.  An instruction is not warranted if it is "based on the merest factual reference or witness comment."  
Jefferson
, 257 Ill. App. 3d at 256.  An instruction on second degree murder is not necessary in every case where the victim is alleged to have provoked the defendant.  
Jefferson
, 257 Ill. App. 3d at 265.  "Instead, sufficient evidence must exist that at the time of the killing, the defendant was acting under a sudden and intense passion resulting from serious provocation by the individual killed."  
Jefferson
, 257 Ill. App. 3d at 265-66; 
People v. Everette
, 141 Ill. 2d 147, 156, 565 N.E.2d 1295 (1990) (the evidence must be sufficient for a reasonable jury to find in the defendant's favor).

Here, the only evidence of any provocation on the victim's part was Martinez's statement.  Martinez testified, "[Defendant] said she got into an argument with her mother and that her mother pulled a knife out on her and that she took the knife away from her mother and she stabbed her with it."  Defendant contends his statement is evidence that the victim's use of a knife during an argument incited a sudden and intense passion within defendant, which provoked her to choke and stab her mother repeatedly.

Martinez's statement is not enough to justify the second degree murder instruction.  When defendant testified, she said she only told Martinez that Mercado had killed her mother, with no mention of her mother pulling a knife.  More importantly, no other evidence supported the theory defendant stabbed her mother due to a serious provocation.  

Even if the jury could reasonably believe what defendant told Martinez, the instruction would not be proper.  According to Martinez, defendant said she disarmed her mother.  There was no mutual combat--only an argument.  In turn, defendant stabbed her mother three times and choked her with an electrical cord.  This degree of retaliation is disproportionate to the alleged provocation and would not justify the second degree murder instruction.  
See 
Nunn
, 184 Ill. App. 3d at 274-75 (second degree murder jury instruction is not necessary when the evidence shows the provocation was slight or defendant retaliated disproportionately to the alleged provocation).  We find the trial court did not abuse its discretion by refusing to instruct the jury on second degree murder.

VIII.  Excessive Sentencing

Defendant contends her extended 92-year prison term for first degree murder was unfair and excessive because Mercado received the same sentence.  Defendant contends that, unlike Mercado, she has no criminal record and greater rehabilitative potential.  

Trial courts are given great deference when making sentencing decisions.  
Illgen
, 145 Ill. 2d at 379.  If a sentence falls within the statutory guidelines, it will not be disturbed on review unless it constitutes an abuse of the trial court's discretion (
Illgen
, 145 Ill. 2d at 379) and it is manifestly disproportionate to the nature of the case (
People v. Nussbaum
, 251 Ill. App. 3d 779, 783, 623 N.E.2d 755 (1993)).  

An abuse of discretion might also occur when two codefendants receive the same sentence, despite having different criminal records or roles in the particular crime, and have different mitigating and aggravating factors.  
People v. Stambor
, 33 Ill. App. 3d 324, 326, 337 N.E.2d 63 (1975).  

"[T]he factors which normally should be uppermost in the mind of the trial court during the sentencing process should be (1) the nature of the particular crime; (2) the role of the defendant in committing the crime (such as who instigated it and what each party did in connection with the crime); and (3) the history and character of defendant, including age, prior record, family situation, employment and other related factors."  
Stambor
, 33 Ill. App. 3d at 326.

Absent an abuse of discretion, this court will not alter a sentence on appeal simply because we might have weighed the mitigating and aggravating factors differently.  
People v. Cord
, 239 Ill. App. 3d 960, 968, 607 N.E.2d 574 (1993).  Furthermore, the rehabilitative potential of the defendant is not entitled to greater weight than the seriousness of the offense, the protection of the public, and punishment.  
Cord
, 239 Ill. App. 3d at 969.

In this case, the trial court focused on the nature of the crime, the facts and method of the killing, including burning the body in a garbage container.  The court described the crime as brutal and heinous.  The court also found defendant's role in the crime egregious because the victim was her 64-year-old mother.  The court said,

"Murdering, in [defendant's] behalf, murdering your mother.  The murder itself, going to the facts, where choking enough to break the cartilage in the neck, the stabbing three or four times.  It's obvious that two people were involved in this and it's obvious that you both were." 

The court also reviewed the mitigation evidence.  The trial judge noted defendant was younger than Mercado, was the mother of a small child, and had no previous criminal history.  

When addressing Mercado, the court said it found the pending attempted murder charge had more significance than his previous narcotics-related felony.  The court also commented both defendants were "model inmates" and "both were active participants in this murder that occurred."    

 The court found both defendants eligible for the death penalty because the murder was a felony murder.  After reviewing all the mitigation evidence, the court declined to impose the death penalty or a life sentence and instead chose to sentence both defendants to extended terms of 92 years' imprisonment for first degree murder.

The record clearly shows the court relied on the important factors given in 
Stambor
.  The trial court focused particularly on the brutal nature of the crime and defendant's role in committing the murder.  In addition to the trial court's comments at sentencing, we note the evidence at trial indicated defendant instigated the attack against her mother.  Accordingly, we find the trial court did not abuse its discretion by giving the same sentence to both defendants, even though the mitigating factors for defendant and Mercado differed.  See 
Fauntleroy
, 224 Ill. App. 3d at 153-54 (trial court did not abuse its discretion by giving same sentence to both defendants who were not similarly situated).

CONCLUSION

For the above-stated reasons, we affirm the judgment of the circuit court.

Affirmed.

HOFFMAN, and SOUTH, JJ., concur.

FOOTNOTES
1: Defendant and Mercado were tried at the same time, but before separate juries.