NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2009
Decided March 13, 2009

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 08-2208

| | |
|---|---|
| AUDREY KLIMAWICZE,<br>　　　　　　*Petitioner-Appellant,*<br><br>　　　v.<br><br>CAROLYN TRANCOSO, Warden,<br>　　　　　　*Respondent-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 06 C 2941<br><br>Matthew F. Kennelly,<br>*Judge*. |

**O R D E R**

Following a jury trial in state court, Audrey Klimawicze was convicted of first-degree murder, armed robbery, and home invasion, for which she received concurrent sentences totaling 92 years. Her direct appeal was unsuccessful, as were her efforts to obtain a writ of certiorari from the Supreme Court of the United States. Klimawicze sought federal collateral relief as well, *see* 28 U.S.C. § 2254, but that, too, was unavailing. Now she turns to this court, arguing that her Sixth Amendment right to confrontation was violated when investigators testified at trial that Klimawicze's boyfriend told her, in an interrogation room, that he had just confessed to the "true story." Klimawicze insists that this is testimonial hearsay, but she is mistaken. The court admitted the testimony not for the truth of the matter asserted—but

rather to explain why Klimawicze had confessed shortly thereafter. The Illinois appellate court concluded that this non-hearsay purpose eliminated any Confrontation Clause problem. And because that decision was not contrary to or an unreasonable application of clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), we affirm.

## Background

### A. Trial Court Proceedings

In August 1997, police officers discovered the partially burned body of Audrey V. Klimawicze—the petitioner's mother—in a garbage container on the south side of Chicago. *People v. Klimawicze*, 815 N.E.2d 760, 765-66 (Ill. App. Ct. 2004). Later that day police arrested Klimawicze (the daughter) and her boyfriend, Hector Mercado. *Id.* at 766. Within hours an eyewitness had identified Mercado as the man pushing the garbage container down an alley the previous evening. *Id.* As the interrogations stretched into the night, a taxi driver also reported a conversation with Klimawicze and Mercado in which Klimawicze had admitted that "she had an argument with her mother and had stabbed her. . . . 'The bitch deserved it.'" *Id.* The taxi driver explained further that Mercado had replied, "'You're right. She deserved it. They can't prove a thing." *Id.* Meanwhile, back at the police station, Klimawicze and Mercado were each telling investigators that the other person was responsible for the crimes. *Id.* Roughly twenty-four hours after his arrest, though, Mercado told a new story. *Id.* at 766-67. According to Mercado's narrative,

> [Klimawicze] kicked her mother and forced her way into the apartment. Mercado followed. [Klimawicze] then strangled the victim with the cord and instructed Mercado to stab her. He stabbed the victim three times while [Klimawicze] continued to choke her. After taking money from the victim's apartment, they went to the projects to buy heroin and dispose of their weapons.

*Id.* at 767. Investigators confronted Klimawicze with Mercado's latest statement, but she did not believe that it came from him. *Id.* So investigators brought Mercado into Klimawicze's interrogation room, where he announced to her, "'I told them the truth.'" *Id.* Shortly thereafter Klimawicze confessed in a written statement detailing how she had choked her mother with a cord while Mercado stabbed her. *Id.*

Klimawicze and Mercado were tried simultaneously before different juries. At trial Klimawicze argued that her confession was false—that it was obtained only after hours of harsh interrogation tactics, isolation, and intimidation. The state countered with another explanation—that Klimawicze confessed in response to learning from Mercado that he had divulged the "true" story. But Mercado was not an available witness for Fifth Amendment

reasons, so the prosecution introduced his statement through two others. Detective Joseph Danzl testified that 45 minutes before Klimawicze confessed, "Hector Mercado made a statement to Audrey Klimawicze. . . . He told her that he had just told the assistant state's attorney and the detective the true story." Assistant State's Attorney Thomas Bilyk also testified that "Hector said I told them the true story." Klimawicze objected to this testimony on hearsay grounds, but the court admitted it for the limited purpose of providing context for her confession. At a sidebar earlier that day, the prosecutor summarized the evidentiary ruling: "[M]y understanding . . . was we could not put the substance of any statement of the co-defendant [Mercado] in, but that we could of course put in whatever he said to Audrey . . . going to the course of the investigation, not the truth of the matter asserted, but to show her state of mind and her reason for giving the [confession]." The state returned to this testimony in its closing argument, emphasizing that Klimawicze confessed in response to Mercado's statement:

> When Hector was brought into the room, and Hector said to Audrey, I told them the true story. That's when she knew the jig was up. That's when she gives the complete and true confession to the murder of her mother.

> How do you know this is true? Ladies and gentlemen, look at the evidence and the facts. First of all, all those shifts in her statements to the police and all those shifts she took when she testified on the witness stand as I said are the shifts made by a guilty mind.

## B. Illinois Appellate Court Proceedings

On direct appeal Klimawicze asserted that the investigators' testimony concerning Mercado's statement violated her right to confrontation under the Sixth Amendment. *Klimawicze*, 815 N.E.2d at 771. But the Illinois court rejected that argument on two grounds, noting the Supreme Court decision in *Crawford v. Washington*, 541 U.S. 36 (2004) some five months earlier. To begin with, the court reasoned, "the substance of Mercado's story was not admitted into evidence." *Id.* And, second, the evidence was admitted for a non-hearsay purpose: "the prosecution was explaining why defendant decided to confess, thereby bolstering the reliability of her confession." *Id.* at 772. The Illinois Supreme Court denied Klimawicze leave to appeal, *People v. Klimawicze*, 829 N.E.2d 791 (Ill. 2005), and the Supreme Court of the United States denied certiorari as well, *Klimawicze v. Illinois*, 544 U.S. 1067 (2005).

### C. Federal Habeas Corpus Proceedings

In denying Klimawicze's § 2254 petition, the district court echoed much of the same analysis. For example, the court emphasized that "the substance of Mercado's statement was not introduced against Klimawicze." The court explained further that "[n]either *Crawford* nor the Confrontation Clause bars . . . the admission of an absent declarant's out-of-court statement for some legitimate evidentiary purpose other than to prove its truth." And "though the prosecutor made reference to this episode in her closing argument, she did not discuss the contents of Mercado's statement but rather argued the point consistent with the purpose for which the Mercado evidence had been offered—to show the circumstances under which Klimawicze had confessed, to refute her claim of undue pressure." The district court concluded that the state-court decision was not an unreasonable application of federal law but issued a certificate of appealability as well. *See* 28 U.S.C. § 2253(c).

## Analysis

Klimawicze's appeal rests on the mistaken premise that the Confrontation Clause bars *all* testimonial statements—even those that are not offered to establish the truth of the matter asserted. *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004), says otherwise, as do various opinions from this and other circuit courts.

In order to prevail Klimawicze must demonstrate that the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to clearly established federal law if the court reached a conclusion opposite to that reached by the Supreme Court on a question of law or confronted materially indistinguishable facts en route to a decision at odds with Supreme Court precedent. *Burgess v. Watters*, 467 F.3d 676, 681 (7th Cir. 2006). And a state court's decision is an unreasonable application of clearly established federal law if the court correctly identified the governing legal rule but applied it unreasonably to the facts of a particular case. *Id.* An incorrect application of clearly established federal law is not enough, though; the application must be objectively unreasonable, "lying well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). We review the district court's denial of habeas corpus relief de novo; and whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law is a mixed question of law and fact that we "also review de novo but with a grant of deference to any reasonable state court decision." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

The Sixth Amendment provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. AMEND. VI. In 2004

the Supreme Court held, in *Crawford,* that the right to confrontation prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." 541 U.S. at 53-54. *Crawford* stopped short of defining "testimonial statements," but the opinion suggests a few examples, among them "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* at 52. Indeed, the court wrote, "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." *Id.* Yet *Crawford* permits courts to admit testimonial statements under certain circumstances. In an often-cited footnote the Court explained that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9.

The Illinois appellate court decided Klimawicze's direct appeal five months after *Crawford* issued, and since then the Supreme Court and the circuit courts have refined *Crawford* considerably. The parties seem to think that these later developments affect Klimawicze's petition, but they are mistaken. This case turns on whether the state court unreasonably applied *Crawford*; everything else is just dross. *See Murillo v. Frank,* 402 F.3d 786, 788-89 (7th Cir. 2005). Nevertheless, the cases that follow *Crawford* shed some light on the Supreme Court's decision—and further reinforce the conclusion that the state-court decision was not objectively unreasonable.

Chief among the later cases is *Davis v. Washington,* 547 U.S. 813 (2006), which explains when a statement is testimonial in the interrogation setting:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822.

The circuit courts, meanwhile, have clung to *Crawford*'s footnote, with the understanding that "when statements are merely offered to show context, they are not being offered for the truth of the matter asserted, and therefore, *Crawford* does not require confrontation." *United States v. Nettles,* 476 F.3d 508, 517 (7th Cir. 2007); *see also United States v. McGee,* 529 F.3d 691, 697 (6th Cir. 2008); *United States v. James,* 487 F.3d 518, 525 (7th Cir. 2007) ("When out-of-court statements are not offered to prove the truth of the matter asserted, the Confrontation Clause is satisfied if the defendant had the opportunity to cross-examine the person repeating the

out-of-court statement."); *United States v. Pryor*, 483 F.3d 309, 312 (5th Cir. 2007); *United States v. Bobb*, 471 F.3d 491, 499 (3d Cir. 2006); *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006); *United States v. Logan*, 419 F.3d 172, 177-79 (2d Cir. 2005). Still, those cases urge vigilance because "there is a concern that the government may, in future cases, seek to admit based on 'context' statements that are, in fact, being offered for their truth." *Nettles*, 476 F.3d at 517.

Klimawicze insists that Mercado's statement—"I told them the truth"—is testimonial under *Davis*. That much may be accurate. Mercado spoke in the midst of a police interrogation, there was no ongoing emergency (the suspects were already in custody), and the whole point of the interrogation was to determine who killed Klimawicze's mother. *See Davis*, 547 U.S. at 822. But *Davis* (2006) is irrelevant; in 2004 the Illinois court had only *Crawford* to work with. Of course, Mercado's statement may be testimonial under *Crawford* as well. 541 U.S. at 52 ("Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard."). Then again, perhaps not: Mercado uttered his statement to Klimawicze, not to police officers. And, strictly speaking, it concerned only what transpired in the police station, not the underlying criminal acts. Ultimately, though, whether the statement is testimonial does not matter in this case. A testimonial statement does not alone amount to a Sixth Amendment violation: *Crawford* requires testimonial *hearsay*.

Klimawicze must also consider whether the statement was admitted for a non-hearsay purpose, and here she stumbles. She insists that the "crafting of a non-hearsay purpose was sheer artifice designed to skirt" her right to confront Mercado. She writes:

> The "truth" of the boyfriend's statement was imperative to the prosecution—when offering the statement to show "why" the petitioner had "truthfully" confessed—because had the boyfriend been falsely implicating the petitioner, or not been implicating her at all, then the petitioner either would not have confessed or her confession would have been vulnerable to a jury's suspicion that the petitioner's confession was untrue. By the State's own logic, and argument to the jury, the boyfriend's true police statement was probative of the alleged truth of the petitioner's confession. By the State's own logic, had the codefendant's statement not been true—and had the codefendant's statement not devastatingly implicated the petitioner—then the codefendant's statement would have been irrelevant to the State's purpose.

Klimawicze has it backwards, though. Whether Mercado actually told the detectives the "true" story is besides the point. All that matters is that Klimawicze believed Mercado had truthfully confessed. Nor did the jury hear any testimony concerning the substance of Mercado's confession.

Klimawicze's concern is that Mercado's out-of-court statement might have led some jurors to infer her guilt (i.e. that Mercado confessed truthfully that the two of them committed the crimes together). But testimonial statements offered for a non-hearsay purpose do not violate the Confrontation Clause—even if they tend to cast doubt on a defendant's innocence. *See Logan*, 419 F.3d at 178 ("As in *Street*, the mere fact that the content of Gordon's and Gabbriellini's statements cast doubt on Logan's innocence does not bring those statements within the ambit of Sixth Amendment protection under *Crawford*."); *see also James*, 487 F.3d at 522, 525 (holding no violation of Confrontation Clause where FBI agent testified that paid informant told agent about past drug transactions with defendant and court instructed jury that the testimony "could be considered only to evaluate [informant's credibility] and to provide context for the Government relationship" with informant); *United States v. Jiménez*, 419 F.3d 34, 44 (1st Cir. 2005). That, too, is post-*Crawford* gloss, but it is helpful when considering whether the state court's decision was objectively unreasonable. After all, a state-court decision cannot be an unreasonable application of clearly established federal law if later federal courts have arrived at the same conclusion under similar circumstances. *See Burgess*, 467 F.3d at 687; *Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006); *Jackson v. Frank*, 348 F.3d 658, 665 (7th Cir. 2003). *Logan* was decided in 2005, using *Crawford* to guide its analysis. And that is enough to doom Klimawicze's § 2254 petition, even if we might disagree with the Second Circuit in the future. *See Burgess*, 467 F.3d at 681-82 ("In this case, as in all cases that come to us under AEDPA, we emphasize that we are expressing no opinion about the correctness of the state court's ruling as a matter of first principles. Should a case in this area reach us through a different procedural avenue without the AEDPA constraints on review, we would be free to evaluate it for ourselves.").

Klimawicze's remaining arguments, although considered, do not warrant discussion.

AFFIRMED.