(No. 86275.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOSE CASTILLO, Appellant.

*Opinion filed December 16, 1999.—Rehearing denied January 31, 2000.*

RATHJE, J., specially concurring.
HARRISON, J., joined by BILANDIC, J., dissenting.

Michael J. Pelletier, Deputy Defender, and Patricia Unsinn, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, Kenneth T. McCurry, Alan J. Spellberg and Owen D. Kalt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:
The sole question presented in this appeal is whether the trial court erred by refusing to instruct the jury on involuntary manslaughter at defendant's murder trial.

We hold that the trial court properly refused the requested instruction.

## BACKGROUND

Defendant was convicted of murder following a jury trial in the circuit court of Cook County. Defendant appealed, and the appellate court affirmed the conviction. 298 Ill. App. 3d 839. We allowed defendant's petition for leave to appeal to this court.

The following evidence was presented at trial. Betty Lou Watts testified that on the night of May 10, 1986, she went to a bar in Chicago Heights to meet the victim, David Flores. Watts and the victim drank and danced with friends from 8 p.m. until 1 a.m. Shortly after 1 a.m., defendant entered the bar and approached the victim. The two men began arguing and then started fighting, knocking over drums in the band that was playing that evening. Patrons in the bar grabbed the two men to separate them, and the owner ordered defendant to leave. As Watts and the victim also prepared to leave, defendant called to the victim to come out to the parking lot. When Watts and the victim arrived in the parking lot, the victim told Watts to go home. The victim and defendant then began fighting again, this time wrestling on the ground. Watts turned her head for a minute because someone called her. While she was looking away, she heard a gunshot. When she turned back around, the victim was on the ground and defendant was standing 10 or more feet away from him, pointing a gun at him. Defendant then fired a second shot, striking the victim. Watts ran to the victim, who was trying to speak. Blood gushed out of his mouth. Watts yelled at defendant not to shoot any more. Defendant fled.

Augustine Falcon testified as follows. On the night of May 10, 1986, he was playing in a band at a bar. Between 1 and 1:30 a.m. on May 11, the band had just finished a song when an argument broke out between the victim

and defendant. The two men began pushing each other and wrestling. The two were then separated, and defendant left the bar. About a minute later, defendant came to the door of the bar and called to the victim to come outside to "settle this." The victim then said, "Let's go," and left the bar. Falcon began to disassemble his band equipment, but when he saw everybody leaving the bar, he decided to go outside. Once outside, he turned and saw defendant standing 10 to 15 feet away from the victim, pointing a gun at the victim. Defendant then fired two shots at the victim in rapid succession. The victim fell to the ground, and Watts ran to cover his body.

Defendant testified as follows. On May 11, 1986, he went into a bar at approximately 1:30 a.m. As he was standing beside the bar, a man came to him and said that he wanted to fight him. Defendant had seen the man before, but was not acquainted with him. The man's breath smelled of alcohol. Defendant told the man that maybe he had mistaken him for someone else. The man then hit defendant. Defendant did not hit back, but instead left the bar. As he was going to his car, the man caught up with him in the parking lot. The man pushed him on the shoulder and then stood in front of him. The two men started to struggle. The other man then produced a weapon. Defendant did not see where the man got the weapon. The man pointed the weapon at defendant. Defendant grabbed the man's hand, and the man fired one shot. Defendant then took the gun away from the man. The man grabbed defendant's shirt sleeve and pulled, causing another shot to fire. The man fell to the ground. Defendant then left the scene, taking the gun with him because he feared that someone in the crowd might use it to hurt him.

Both sides stipulated that the victim's blood-alcohol content at the time of death was 0.221, that a single bullet was found lodged in a building near the crime scene,

and that the victim died from another bullet found lodged in his chest. The trial court instructed the jury on the charged offense of murder and on the justifiable use of force in self-defense. The court denied defendant's motion to instruct the jury on involuntary manslaughter, ruling that there was no evidence of a reckless act. The jury convicted defendant of murder.

On appeal, defendant argued that the trial court erred by refusing to give an instruction on involuntary manslaughter. The appellate court rejected this argument, holding that the evidence at trial could have supported either a conviction or acquittal of murder, but that there was no evidence of reckless conduct by the defendant as required for an involuntary manslaughter instruction. 298 Ill. App. 3d at 844-45.

## ANALYSIS

Defendant's sole contention before this court is that the trial court erred by refusing to instruct the jury on the offense of involuntary manslaughter. The instruction of the jury is a matter resting within the sound discretion of the trial court. *People v. Hope*, 168 Ill. 2d 1, 46 (1995). An instruction is justified on a lesser offense where there is some evidence to support the giving of the instruction. *People v. DiVincenzo*, 183 Ill. 2d 239, 249 (1998). Where some evidence supports the instruction, the circuit court's failure to give the instruction constitutes an abuse of discretion. *DiVincenzo*, 183 Ill. 2d at 249.

A defendant commits involuntary manslaughter when, without lawful justification, he unintentionally kills an individual by recklessly performing acts that are likely to cause death or great bodily harm. *DiVincenzo*, 183 Ill. 2d at 250; 720 ILCS 5/9—3 (West 1996). For purposes of involuntary manslaughter, a person acts recklessly when he consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death

or great bodily harm to another. *DiVincenzo*, 183 Ill. 2d at 250; 720 ILCS 5/4—6 (West 1996).

Defendant contends that there was some evidence that he acted recklessly in causing the victim's death. Defendant first argues that his own testimony contained some evidence that his struggle with the victim over the gun was reckless. Defendant is incorrect. In order for this act to be reckless, defendant must have consciously disregarded a substantial and *unjustifiable* risk that the act would cause death or great bodily harm. *DiVincenzo*, 183 Ill. 2d at 250; 720 ILCS 5/4—6 (West 1996). The only evidence in defendant's testimony that he suggests is evidence of recklessness is that he struggled with the victim after the victim drew a gun and threatened to injure him. This testimony, however, was not evidence of recklessness, but was instead some evidence that defendant acted with regard to a *justifiable* risk of injuring the victim in order to protect himself. The evidence contained in defendant's own testimony thus did not warrant an involuntary manslaughter instruction.

Second, defendant argues in the alternative that some evidence existed that, contrary to his own testimony, he himself produced the gun during the struggle, rather than the victim. Defendant apparently bases this contention on the fact that none of the State's witnesses saw the victim draw the gun. Defendant thus asserts that there was some evidence that it was actually defendant who drew the gun, and if so, there was some evidence that he thereby acted recklessly. While the court is impressed with defendant's ingenuity, we note one fatal flaw in his argument: there was absolutely no evidence that defendant produced the gun. Defendant did not so testify, and neither did any of the State's witnesses. In order to prove the recklessness required for the giving of an involuntary manslaughter instruction, defendant must point to some evidence of something he did reck-

lessly. Defendant may or may not be correct that it would have been reckless for him to draw a gun during his struggle with the victim, but, regardless, there is absolutely no evidence that he did so.

For these reasons, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE RATHJE, specially concurring:

I agree with the majority's conclusion that the trial court properly refused to instruct the jury on involuntary manslaughter. I write separately only to note that, in addition to the two arguments addressed by the majority, defendant raises an argument *not* addressed by the majority.

In his brief before this court, defendant argues that, based upon the evidence presented at trial, the jury reasonably could have drawn any of the following three conclusions: (1) defendant continued to struggle with the victim after the victim drew a gun; (2) defendant continued to struggle with the victim after successfully wresting the gun from the victim; and (3) defendant himself drew a gun during an altercation with the victim. According to defendant, the trial court should have given the involuntary manslaughter instruction because each of these three conclusions reflects reckless behavior by the defendant.

Although the majority addresses and disposes of conclusions (1) and (3) above, it does not address conclusion (2). This oversight in no way affects the outcome of this case, as defendant waived this argument by raising it for the first time during oral argument before the appellate court. See *People v. Lewis*, 165 Ill. 2d 305, 334 (1995) (arguments raised for first time on appeal are waived). Nevertheless, in fairness to both the parties presently before this court as well as future litigants, we

ought at least to acknowledge each argument raised, even if that argument unquestionably is waived.

JUSTICE HARRISON, dissenting:

An instruction defining a lesser offense should be given if there is evidence in the record which, if believed by the jury, would reduce the crime to the lesser offense. If the record contains any credible evidence that would reduce the crime of first degree murder to involuntary manslaughter, an involuntary manslaughter instruction is warranted. *People v. DiVincenzo*, 183 Ill. 2d 239, 249 (1998).

The crime for which defendant was charged took place in 1986. The law in effect at that time provided that a person committed murder when he killed an individual without lawful justification and, *inter alia*, (1) he either intended to kill or do great bodily harm to that individual or another, or knew that the acts which caused the death would cause death to that individual or another; or (2) he knew that such acts created a strong probability of death or great bodily harm to that individual or another. Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2). By contrast, a person was guilty of involuntary manslaughter when he unintentionally killed an individual without lawful justification and his acts, whether lawful or unlawful, which caused the death were such as were "likely to cause death or great bodily harm to some individual, and he perform[ed] them recklessly." Ill. Rev. Stat. 1983, ch. 38, par. 9—3.

The main difference between these offenses is the mental state that accompanies the conduct resulting in the victim's death. *DiVincenzo*, 183 Ill. 2d at 249. The crux of involuntary manslaughter is recklessness.

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such dis-

regard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Ill. Rev. Stat. 1985, ch. 38, par. 4—6.

The facts and circumstances of each case must be considered when determining whether an involuntary manslaughter instruction is warranted. *DiVincenzo*, 183 Ill. 2d at 251. Based upon the facts adduced at trial here, I disagree with the appellate court and would hold that defendant was entitled to an involuntary manslaughter instruction. Decedent was killed when his pistol discharged during a tavern brawl with defendant. There was apparently no significant disparity in size and strength between defendant and the decedent, and the struggle which led to the decedent's death was not long in duration. Both of these are relevant considerations. *DiVincenzo*, 183 Ill. 2d at 251. While a jury could have found that defendant was the initial aggressor, our court has specifically held that an involuntary manslaughter instruction may be appropriate even where the defendant may have provoked the confrontation because "a defendant may act recklessly where he commits deliberate acts but disregards the risks of his conduct." *DiVincenzo*, 183 Ill. 2d at 252.

How exactly decedent was shot is disputed. Some testimony indicated that defendant pointed the gun at him when it fired. Pointing a loaded gun at another has been found to constitute reckless conduct that will support a conviction for involuntary manslaughter. See *People v. Moczarney*, 65 Ill. App. 3d 410, 416 (1978). The act becomes even more reckless when the one pointing the loaded weapon is under the influence of intoxicating liquor. See *People v. Roberts*, 36 Ill. App. 3d 811, 819 (1976). At the time decedent was killed, both he and defendant had been drinking.

In ruling against defendant, the appellate court considered it significant that the gun was initially introduced into the fight by the decedent rather than by

defendant. I cannot share that view. The fact that the weapon was drawn by decedent is consistent with the alternate theory that defendant was acting out of self-defense. It does not, however, preclude a conclusion that defendant's conduct was reckless within the meaning of the law.

Once defendant succeeded in taking the gun. away from the decedent, he could have run away or discarded the weapon so that the decedent could not reach it. Instead, he remained in the fray with the weapon in his hand. There is nothing to suggest that he had to do so, or reasonably believed that he had to do so, in order to insure his own safety.

In the best of circumstances, merely handling a loaded gun in close proximity to others while under the influence of alcohol is a reckless act. See *Moczarney*, 65 Ill. App. 3d at 416. When the loaded gun is being handled in the midst of a bar fight with an opponent whose blood-alcohol content is several times higher than the legal limit, as was the case here, the recklessness is manifest. It is a conscious disregard for a substantial and unjustifiable risk and "a gross deviation from the standard of care which a reasonable person would exercise in the situation." Ill. Rev. Stat. 1983, ch. 38, par. 4—6.

To the extent that there is inconsistency between defendant's contention that the jury should have been instructed on involuntary manslaughter and his alternate claim of self-defense, the inconsistency is not fatal to this appeal. Illinois law allows a criminal defendant to raise inconsistent defenses. Indeed, we have specifically held that where there is evidentiary support for an involuntary manslaughter instruction, such an instruction is not prohibited by a claim of self-defense. *People v. Whiters*, 146 Ill. 2d 437, 442 (1992).

For the foregoing reasons, the circuit court abused its discretion when it denied defendant's request to instruct

the jury on the lesser-included offense of involuntary manslaughter. The judgment of the appellate court affirming the circuit court's judgment should therefore be reversed, and the cause should be remanded to the circuit court for a new trial. Accordingly, I dissent.

JUSTICE BILANDIC joins in this dissent.