SECOND DIVISION
April 5, 2011

No. 1-09-1131

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 05 C 441431 |
| | ) | |
| JAVIER LUNA, | ) | Honorable |
| | ) | Carol A. Kipperman, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Karnezis and Harris concurred in the judgment and opinion.

## OPINION

Defendant Javier Luna appeals following his conviction by a jury for second-degree murder. The trial court sentenced defendant to 20 years' incarceration. Defendant raises three issues on appeal: (1) whether he was entitled to a jury instruction on the lesser-included offense of involuntary manslaughter; (2) whether the trial court improperly considered an element of the offense as an aggravating factor in sentencing defendant or, alternatively, whether the 20-year sentence was excessive; and (3) whether the trial court correctly admonished the venire pursuant to Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). We affirm.

## I. BACKGROUND

On November 23, 2005, defendant and several acquaintances spent most of the day drinking alcohol and using cocaine. The victim, Jose Alfredo Basilio Miranda, joined the group at some point and brought more beer. Late in the evening of November 23 or early in the morning of November 24, two men from the group got into a heated argument over a card game. One of the men retrieved a knife from his bedroom and stabbed the other man in the hand and

stomach, although apparently the wounds were neither severe nor life-threatening. The attacker then threatened the other men in the room. Defendant armed himself with a knife from the kitchen, while several other men broke up the fight.

The foregoing facts are largely undisputed, but what happened next is not clear because most of the occupants of the apartment were focused on breaking up the fight and they did not witness the actual murder. According to one account, defendant declared that no one would be allowed to leave the apartment, and then, unprovoked, stabbed the victim in the chest. According to defendant, he was helping the man who had been stabbed when he "sensed" someone behind him and lashed out with his knife. Defendant later gave shifting reasons for his action, ranging from defending himself against a perceived violent attack to merely attempting to "scare away" the person by waving the knife.

Regardless, the subsequent facts are clear: defendant's knife punctured the victim's chest, killing him. Defendant was charged with first-degree murder. During *voir dire*, the trial court informed the entire venire of the following:

> "[I]t is the burden of the State who has brought the charges to prove the defendant guilty beyond a reasonable doubt. What this means is that the defendant has no obligation to testify in his own behalf or to call any witnesses in his defense. He may simply sit here and rely upon what he and his attorneys perceive to be the inability of the State to present evidence to meet their burden.
>
> Should that happen you will have to decide the case on the basis of the evidence presented by the prosecution. The fact the defendant does not testify must not be considered by you in any way in arriving at your verdict.

However, should the defendant elect to testify or should his attorneys present witnesses in his behalf, you are to consider that evidence in the same manner and by the same standards as evidence presented by the State's Attorneys. The bottom line, however, is there is no burden upon the defendant to prove his innocence."

At trial, defendant asserted self-defense but testified somewhat inconsistently. Defendant testified that he was afraid for his life and, at different points in his testimony, stated that he intentionally stabbed the victim in order to save himself from a perceived violent attack or, alternatively, merely swung the knife in order to scare the victim away. However, the jury was also presented with previous statements by defendant to the effect that he was "doing a favor" for the man who had been stabbed in the fight when he stabbed the victim.

At the jury instructions conference, defendant sought an instruction for the lesser-included offense of manslaughter, based on his statement that he had only been trying to scare the victim away at the time that the victim was stabbed. The trial court declined to give the instruction. The jury ultimately convicted defendant of the lesser-included offense of second-degree murder based on imperfect self-defense.

At sentencing, the trial court made the following statement, which is reproduced here in full:

"All right. I presided over the trial. I heard all the facts of the case. I read the Presentence Investigation.

With regard to aggravation, one factor in aggravation is serious bodily harm. In this case it was extreme serious bodily harm in that the victim is dead.

3

No. 1-09-1131

Other factors which I would consider in pronouncing a sentence is a deterrence to others so that they will not commit the same offense, also, the protection of the public from this type of conduct.

You have a case here of a victim who is innocent. At the most, he may have had some alcohol in his system, but he didn't have a gun. He didn't have a knife. He wasn't doing anything, and he was stabbed in the chest and died from that.

Based upon the actions of the defendant, punishment has to be taken into account as well as the protection of the public and deterrence and the bodily harm or death which was caused in this case.

The sentence that the defendant's attorney is asking for is eight years but the Court feels is inadequate just in terms of punishment and in terms of protection of the public and in terms of deterrence and in terms of what happened in this case.

While the Court is mindful of the fact that the defendant has no criminal background, considering all the facts in this case, the Court would sentence him to 20 years IDOC."

Defendant was accordingly sentenced to 20 years' incarceration. This appeal followed.

II. ANALYSIS

Defendant raises three issues: (1) whether the trial court should have given the jury an instruction on the lesser-included offense of involuntary manslaughter; (2) whether the trial court improperly considered the victim's death as an aggravating factor in sentencing defendant or,

4

alternatively, whether the 20-year sentence was excessive; and (3) whether the trial court correctly admonished the venire pursuant to Rule 431(b).

## A. Jury Instructions

We first consider whether the jury should have received an involuntary manslaughter instruction. Both parties agree that this issue has been forfeited because defendant failed to both object at trial and raise the issue in a posttrial motion, so this issue can only be reviewed under the plain-error doctrine. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). We may review unpreserved error only where either "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Defendant bears the burden of persuasion. See *id.*

The first step in plain-error analysis is determining whether an error occurred. See *id.* The supreme court has summarized the proper analysis in the context of an involuntary manslaughter instruction as follows:

"The giving of jury instructions is a matter within the sound discretion of the trial court. [Citation.] An instruction on a lesser offense is justified when there is some credible evidence to support the giving of the instruction. [Citation.] Where there is evidentiary support for an involuntary manslaughter instruction, the failure to give the instruction constitutes an abuse of discretion. [Citation.] Whether an involuntary manslaughter instruction is warranted depends on the facts

5

and circumstances of each case. [Citation.]

> The offenses of involuntary manslaughter and first degree murder require mental states, such that involuntary manslaughter requires a less culpable mental state than first degree murder. Particularly, involuntary manslaughter requires that a defendant unintentionally kill an individual by recklessly performing acts that are likely to cause death or great bodily harm." *People v. Jones*, 219 Ill. 2d 1, 31 (2006).

The primary question here is whether there is any credible evidence that defendant did not intentionally stab the victim but instead merely swung the knife recklessly in the victim's direction. The sole piece of evidence on this point is defendant's trial testimony that he intended only to scare the victim away at the time that he swung the knife.

Standing by itself, this would seem to qualify as some evidence of lack of intent to kill, which would arguably support an involuntary manslaughter instruction. However, the State maintains that defendant raised the affirmative defense of self-defense in this case, and it argues that by asserting self-defense defendant has necessarily admitted the underlying offense, that is, defendant has conceded that he *intentionally* stabbed the victim. The State argues that this means that defendant cannot inconsistently assert involuntary manslaughter, which would require that he *unintentionally* stabbed the victim. While logically persuasive, the supreme court has rejected this precise argument. See *People v. Castillo*, 188 Ill. 2d 536, 545 (1999) ("To the extent that there is inconsistency between defendant's contention that the jury should have been instructed on involuntary manslaughter and his alternate claim of self-defense, the inconsistency is not fatal to this appeal. Illinois law allows a criminal defendant to raise inconsistent defenses.

6

Indeed, we have specifically held that where there is evidentiary support for an involuntary manslaughter instruction, such an instruction is not prohibited by a claim of self-defense.") (citing *People v. Whiters*, 146 Ill. 2d 437, 441-42 (1992)).

Additionally, the State cites case law that stands for the proposition that "a defendant is not entitled to reduce first degree murder to [involuntary manslaughter] by a hidden mental state known only to him and unsupported by the facts." *People v. Jackson*, 372 Ill. App. 3d 605, 614 (2007); accord *People v. Sipp*, 378 Ill. App. 3d 157, 164 (2007). *Jackson* summarized the state of case law as follows: "Illinois courts have consistently held that when the defendant intends to fire a gun, points it in the general direction of his or her intended victim, and shoots, such conduct is not merely reckless and does not warrant an involuntary-manslaughter instruction, regardless of the defendant's assertion that he or she did not intend to kill anyone. [Citations.]" *Jackson*, 372 Ill. App. 3d at 613-14.

Although *Jackson* discusses this issue in the context of firing a gun, the same reasoning applies to the facts of this case. Here, the evidence demonstrated that (1) defendant intended to swing the knife, which, like a gun, is a deadly weapon; (2) defendant either pointed the knife over his shoulder in the direction of the victim or walked up to the victim and pointed the knife at his chest; and (3) defendant swung the knife at the victim. Following *Jackson*, the evidence unequivocally demonstrated that defendant *intended* to swing the knife in the victim's direction, which is all that is required under *Jackson* to preclude an involuntary manslaughter instruction. Whether defendant might have had the additional subjective intent to either kill or scare the victim away is irrelevant. His later claim at trial that he intended only to scare the victim away cannot be used in support of an involuntary manslaughter instruction because it is merely his

7

own statement about his own "hidden" intent and is not supported by any other evidence.

As with the gun in *Jackson*, defendant's act of intentionally swinging the knife at the victim makes his conduct more than reckless, precluding an involuntary manslaughter instruction. No relevant evidence was presented that could support an involuntary manslaughter instruction, and consequently, the trial court did not err by refusing to instruct the jury on the lesser-included offense of involuntary manslaughter.

### B. Sentencing

We next consider whether the trial court improperly considered the victim's death as an aggravating factor in sentencing defendant. There is "a general prohibition against the use of a single factor both as an element of a defendant's crime *and* as an aggravating factor justifying the imposition of a harsher sentence than might otherwise have been imposed." (Emphasis in original.) *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992). The factor here was the victim's death, and the disagreement between the parties is over the effect of the trial court's statement that "[w]ith regard to aggravation, one factor in aggravation is serious bodily harm. In this case it was extreme serious bodily harm in that the victim is dead. *** Based upon the actions of the defendant, punishment has to be taken into account as well as the protection of the public and deterrence and the bodily harm or death which was caused in this case." The defense insists that this was an impermissible double enhancement, while the State argues that it was merely an observation that the victim died.

The trial court mentioned the death of the victim twice, the first time noting that it is "one factor in aggravation" and the second time noting that death is one factor that "has to be taken into account." Although we cannot say for certain, based on the trial court's statements during

8

the sentencing hearing it is probable that the trial court considered the death of the victim as an aggravating factor, and death is an element of second-degree murder. See 720 ILCS 5/9-2 (West 2008) (citing 720 ILCS 5/9-1 (West 2008)); 730 ILCS 5/5-5-3.2(a) (West 2008) (listing statutory factors in aggravation that weigh in favor of a term of imprisonment).

However, "not every instance in which an aggravating factor is improperly considered in sentencing calls for automatic reversal, and the cases make it clear that this rule should not be applied rigidly." *People v. Csaszar*, 375 Ill. App. 3d 929, 951 (2007). The appropriate inquiry in this situation is as follows:

> "[R]eliance on an improper factor in aggravation does not always necessitate remandment for resentencing. Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing. [Citations.] However, where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required." (Internal quotation marks omitted.) *People v. Gilliam*, 172 Ill. 2d 484, 521 (1996) (quoting *People v. White*, 114 Ill. 2d 61, 67 (1986)).

The ultimate question that we must resolve on this point is whether the trial court's improper consideration of the victim's death was harmless and did not result in a harsher sentence than would otherwise have been meted out. See, *e.g.*, *People v. Verser*, 200 Ill. App. 3d 613, 621 (1990).

Here, the consideration of the victim's death was only one of several factors that the trial court mentioned in aggravation. In sentencing defendant to 20 years' incarceration, the trial

9

court also considered such factors as the fact that the victim was innocent and unarmed, deterrence, protection of the public, and punishment. However, the trial court discussed only one of these factors in detail: the innocence of the victim. The trial court stated, "You have a case here of a victim who is innocent. At the most, he may have had some alcohol in his system, but he didn't have a gun. He didn't have a knife. He wasn't doing anything, and he was stabbed in the chest and died from that." As for the remaining factors, the trial court merely recited them and noted that they should be taken into account. Based on the record before us, the trial court's reference to the victim's death was minimal, and given the court's explicit reliance on the innocence of the victim in aggravation, we cannot say that the trial court's consideration necessarily led it to impose a harsher sentence than would otherwise have been imposed. Consequently, although the trial court may have impermissibly considered the victim's death as an aggravating factor, remand for resentencing is not necessary in this case.

Alternatively, defendant argues that the trial court failed to sufficiently consider facts in mitigation, making the sentence of 20 years excessive. Sentencing decisions are reviewed only for abuse of discretion, and the supreme court has summarized the proper method of review as follows:

> "It is well settled that the trial court has broad discretionary powers in imposing a sentence [citation], and the trial court's sentencing decision is entitled to great deference. [Citations.] The trial court is granted such deference because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence. The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social

10

environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. [Citation.]

Although the trial court is vested with wide discretion in sentencing, such discretion is not without limitation. Supreme Court Rule 615(b)(4) grants the reviewing court the power to reduce the sentence imposed by the trial court. [Citation.] The rule itself, however, does not set forth the scope of this power or the circumstances under which it should be exercised. Rather, decisions of this court have established that, absent an abuse of discretion by the trial court, the sentence may not be altered on review. [Citations.] For example, a sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense. [Citation.]" *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000).

In this case, the 20-year sentence was within the statutory range for second-degree murder, although it was the maximum sentence possible. See 730 ILCS 5/5-4.5-30(a) (West 2008) (mandating a sentence of between 4 and 20 years for second-degree murder). Defendant's argument is premised on the assertion that the trial court did not consider factors in mitigation, specifically defendant's lack of criminal history, his age, and his rehabilitative potential.

The trial court explicitly stated that it was aware that defendant had no criminal background, and it was not required by law to consider the other factors that defendant argued in mitigation. See 730 ILCS 5/5-5-3.1 (West 2008) (listing statutory factors in mitigation).

No. 1-09-1131

Defendant's argument is essentially that the trial court failed to sufficiently balance the factors in aggravation and mitigation before imposing sentence. However, defendant offers little in the way of authority for this proposition, and defendant's arguments must be considered against the standard of review. Although the trial court's sentence was severe, it considered all of the evidence presented in mitigation that it was statutorily required to consider, the crime was the murder of someone who was unarmed and by all accounts blameless, and the ultimate sentence was within the statutory range. Based on these facts, we cannot say that the trial court abused its discretion by sentencing defendant to 20 years' incarceration.

## C. *Voir Dire*

Finally, we consider whether the trial court properly admonished the venire pursuant to Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). This issue is controlled by the supreme court's recent decision in *People v. Thompson*, 238 Ill. 2d 598 (2010), which was issued during the pendency of this appeal. The parties completely disagree over the application of *Thompson* to the facts of this case, and both claim that the opinion supports their position.

The parties agree on at least two points: (1) the trial court did not strictly comply with Rule 431(b), and (2) defense counsel failed to object during *voir dire*. Resolution of this issue therefore requires answering three questions. First, did defendant forfeit this issue by failing to object during *voir dire* or by failing to raise it in a posttrial motion? Second, if the issue was forfeited and consequently can only be reviewed under the plain-error doctrine, was the trial court's admonition to the venire and failure to individually question the jurors on that point error? Third, if it was error, is it reversible error under the plain-error doctrine?

Regarding the first question, defendant concedes that he failed to object during *voir dire*,

12

but asserts that he was not required to object because it is the trial court's responsibility to properly question jurors on Rule 431(b). Defendant cites little authority for this proposition, and the authority that he does cite, even if it stands for such a proposition, does not survive *Thompson*. The supreme court considered a similar argument by the defendant in *Thompson*, in which the defendant asserted that he did not need to object to the trial court's erroneous Rule 431(b) admonishment due to the *Sprinkle* doctrine. See *Thompson*, 238 Ill. 2d at 612. The supreme court rejected this position, noting that the doctrine is only available in rare circumstances. *Id.* More to the point for this case, the court made the following observation:

"We have stressed the importance of applying the forfeiture rule uniformly except in compelling situations because failure to raise a claim properly denies the trial court an opportunity to correct an error or grant a new trial, thus wasting time and judicial resources. [Citation.]

In this case, there is no indication that the trial court would have ignored an objection to the Rule 431(b) questioning. We presume that the trial court would have complied with the mandatory language of Supreme Court Rule 431(b) had the error been pointed out at trial. Moreover, defendant does not argue that the trial court overstepped its authority in the jury's presence. A simple objection would have allowed the trial court to correct the error during *voir dire*. Accordingly, we conclude there is no compelling reason to relax the forfeiture rule in this case." *Id.*

The forfeiture principle should not be relaxed in this case, and for the same reasons as in *Thompson*. The supreme court made clear that a defendant still bears the burden of objecting to an erroneous Rule 431(b) admonishment, even though the trial court is responsible for

13

admonishing the venire correctly. This issue is consequently forfeit because defendant failed to object during *voir dire*. Regardless, even if we found that defendant did not have to object in order to preserve the error, defendant also failed to raise the issue in his posttrial motion. Without raising the issue in both a contemporaneous objection and after trial, the issue is forfeit and can only be reviewed under the plain-error doctrine. See *id.* at 611-12 (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). In order to obtain reversal and a new trial under the plain-error doctrine, defendant bears the burden of persuasion. See *Thompson*, 238 Ill. 2d at 613.

As previously stated, the first step of plain-error analysis is determining whether an error occurred (see *id.*), and so we turn to the second question: whether the trial court properly admonished the venire. The only question in determining error here is whether the trial court strictly complied with Rule 431(b) when it admonished the venire. The supreme court described the correct analysis as follows in *Thompson*:

> "The language of Rule 431(b) is clear and unambiguous. The rule states that the trial court 'shall ask' potential jurors whether they understand and accept the enumerated principles. While the prospective jurors may be questioned individually or in a group, the method of inquiry must 'provide each juror an opportunity to respond to specific questions concerning the [Rule 431(b)] principles.' The committee comments emphasize that trial courts may not simply give 'a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law.' [Citation.]
>
> Rule 431(b), therefore, mandates a specific question and response process. The trial court must ask each potential juror whether he or she understands and

14

accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on his or her understanding and acceptance of those principles." *Id.* at 607.

It is undisputed in this case that the trial court neglected to ask the jurors whether they understood and accepted the fourth principle, that is, that defendant need not testify and that his decision not to cannot be held against him. The State argues that the trial court substantially complied because it explained the principle to the entire venire and asked if individual panels accepted and understood three of the four principles, but this is irrelevant to the question of error. The trial court failed to comply with Rule 431(b)'s clear requirements, and that is error under *Thompson*. *Cf. id.* ("Most notably, the trial court did not question any of the prospective jurors on the third principle, whether they understood and accepted that defendant was not required to produce any evidence on his own behalf. Rule 431(b) requires trial courts to address each of the enumerated principles. The failure to address the third principle, by itself, constitutes noncompliance with the rule.").

The final question is whether the trial court's error is reversible under either prong of the plain-error doctrine. See *id.* at 613. In defendant's opening brief, he asserted that the error was reversible under the second prong, relying heavily on *People v. Glasper*, 234 Ill. 2d 173 (2009). However, the supreme court addressed and rejected this argument in *Thompson*, finding that the critical question in establishing second-prong plain error in this situation is whether the defendant has shown that the trial court's Rule 431(b) error resulted in impaneling a biased jury. See *Thompson*, 238 Ill. 2d at 614. Defendant in this case has offered no evidence of bias, and he

therefore cannot carry his burden under the second prong.

Defendant alternatively asserts that the error is reversible under the first prong of the doctrine because the evidence was closely balanced. *Thompson* did not reach this issue because the defendant in that case asserted only second-prong error, and it is therefore possible that the first prong is still available for Rule 431(b) errors. See *id.* at 613. Even so, defendant still bears the burden of persuasion, and defendant argues only that the evidence against him on the question of self-defense was closely balanced. It was undisputed that defendant stabbed the victim, so the only real question at trial was whether defendant reasonably or unreasonably believed (or did not believe at all) that he was in imminent danger of severe bodily harm or death and that deadly force was needed to prevent such harm.

However, even if we assumed that the evidence was closely balanced on the issue of self-defense, defendant fails to explain how the Rule 431(b) error could have tipped the scales against him. In this case defendant testified, and based on that fact we cannot see how defendant could have been prejudiced by the trial court's error in failing to ensure that the venire understood and accepted the principle that a defendant's decision not to testify cannot be held against him. Defendant offers no explanation, and he therefore cannot carry his burden of persuasion. As a result, the trial court's Rule 431(b) error is not reversible under the first prong of the plain-error doctrine.

## III. CONCLUSION

As explained above, the trial court did not err by declining to instruct the jury on the lesser-included offense of involuntary manslaughter, and although the trial court failed to properly admonish the venire pursuant to Rule 431(b), the error is not reversible under the plain-

error doctrine. Furthermore, trial court did not abuse its discretion in imposing a sentence of 20 years' incarceration. Defendant's conviction and sentence are consequently affirmed.

Affirmed.