# Illinois Official Reports

## Appellate Court

***People v. Decatur*, 2015 IL App (1st) 130231**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TAUREAN DECATUR, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0231 |
| Filed | December 2, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-8248; the Hon. Noreen Valeria-Love, Judge, presiding. |
| Judgment | Affirmed; mittimus corrected. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Jessica D. Fortier, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Mari R. Hatzenbuehler, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Lavin and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a 2012 bench trial, defendant Taurean Decatur was convicted of one count of first degree murder (though the mittimus reflects conviction on two counts) and two counts of attempted murder, for which he was sentenced to a total of 105 years' imprisonment. His sole argument on appeal is that his sentence was excessive. Because Decatur's sentence is well within statutory guidelines and was not the product of any error committed by the trial court, we affirm the judgment and correct the mittimus.

¶ 2    BACKGROUND

¶ 3    The State's evidence at trial revealed that on the night of October 9, 2009, a fight occurred at Town Tap bar in Broadview, Illinois, resulting in the fatal shooting of Maurice Orange and gunshot wounds to Larry Ankum and Kevin Marshall. Others present that night included Michael Orange, Maurice's twin brother, Steven Milton, a friend of Marshall and the Orange brothers, and Decatur.

¶ 4    The fight initially began in the bar, where several men were "jumping on" Milton, but bar staff soon moved the brawlers outside. Once outside, Ankum hit Milton, who fell to the ground. While Milton was lying unconscious, Decatur shot at him, saying "[Expletive], what you going to do now." Meanwhile, Ankum had turned to fight with Marshall, and Decatur pointed his gun at Marshall and fired a second shot, hitting him in the leg and also striking Ankum. Decatur then shot at the Orange brothers, who were standing off to the side. Michael and Maurice immediately retreated, and Maurice told Michael he had been shot. The two proceeded to the hospital, where Maurice later died from his injuries.

¶ 5    Michael and Marshall along with witnesses Carlyon Jones and Lexly White all identified Decatur as the shooter. Police issued an arrest warrant for Decatur on October 21, 2009, but he was not apprehended until November 3, when authorities in Calhoun, Michigan alerted Chicago police that they had a subject in custody with fingerprints matching Decatur's.

¶ 6    Decatur testified on his own behalf that he acted in self-defense. According to Decatur, he carried a gun into Town Tap on October 9 for protection. He consumed several drinks, despite being underage, and was on the dance floor when he saw his friend Ankum and another friend, Charles Decury, arguing with Milton. Milton swung at Ankum, and Decatur intervened in the fight to help his friends. Before staff removed the men from the bar, Milton threatened to kill Decatur and Ankum. Once outside, Milton swung at Ankum, and when Ankum hit back, Milton fell to the ground. Marshall then began hitting Ankum. Decatur did not see anyone with a weapon, but nevertheless drew his gun and told Marshall to leave Ankum alone. Michael then moved to hit Decatur at the same time Decatur saw Maurice reaching into his waistband. Decatur, scared, then shot at Maurice; however, Decatur denied shooting at either Milton or Marshall. Decatur testified that he fled to Michigan after the shooting because he feared apprehension. On cross-examination, Decatur acknowledged that he never told police that he saw Maurice reaching into his waistband, and further admitted telling detectives during his initial interview that he had never been to Town Tap.

¶ 7    Ankum corroborated portions of Decatur's version of events, testifying specifically to Milton's death threat. Ankum also observed one of the Orange brothers take a swing at Decatur before he heard gunshots.

¶ 8    Following closing arguments, the trial court found Decatur guilty of first degree murder of Maurice and attempted murder of Milton and Marshall. The trial court stated that it disbelieved Decatur's self-serving account of events due to its internal contradictions and inconsistencies.

¶ 9    At sentencing, the court first heard a victim impact statement from Maurice's mother. The parties also introduced the presentence investigation report, which reflected that Decatur had previously been convicted of possession of narcotics and sentenced to probation, which was terminated satisfactorily. In addition, he had a pending charge of aggravated battery of a police officer that allegedly occurred while he was awaiting trial.

¶ 10    In mitigation, Decatur's counsel noted that Decatur was only 19 years old in October 2009, and referred to age as "the single most important factor" in sentencing. Specifically, he argued that scientific evidence suggested that a 19-year-old's brain was not fully developed. The trial court rejected this argument, stating:

"Your attorney argues to take into consideration the fact that you're 19 and that at 19, brains are somewhat underdeveloped. I think, just tapping into my own experiences, I grew up, many of my friends grew up. My family grew up. I would go so far to say many other people in this courtroom grew up knowing the difference between right and wrong.

And when I was 19, I knew the difference between right and wrong, even if my brain was underdeveloped based on that age. A five-year-old kid knows the difference between right and wrong."

The court went on to note that Decatur expressed no remorse for his actions and appeared unmoved by Maurice's mother's statement. The court then sentenced Decatur to 40 years of imprisonment on the count of first degree murder, with a mandatory add-on of 25 years for personally discharging the gun that killed Maurice, and two concurrent terms of 20 years each on the two attempted murder counts, with corresponding 20-year firearm enhancements, to run consecutively to the sentence for first degree murder. In total, Decatur was sentenced to 105 years' imprisonment. His motion to reconsider sentence was unsuccessful, and he timely appeals.

¶ 11    ANALYSIS

¶ 12    We review a trial court's sentencing decision for an abuse of discretion, as the trial court, having observed the defendant and the proceedings, is better suited to consider sentencing factors than the reviewing court, which relies on the "cold" record. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A sentence within statutory limits will not be deemed an abuse of discretion unless it is at variance with the spirit and purposes of the law or manifestly disproportionate to the nature of the offense. *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). Importantly, it is the seriousness of the crime–rather than the presence of mitigating factors–that is the most important factor in determining an appropriate sentence. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). Indeed, we will not find that a minimum sentence is necessarily warranted merely due to the presence of mitigating factors. *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 112. Moreover, we will not substitute our judgment for the trial court because we may have balanced the factors differently. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010).

¶ 13    As an initial matter, we note that the trial court had no discretion as to whether to impose a sentencing enhancement for the attempted murder charge, or whether to run the sentences consecutively. See 720 ILCS 5/8-4(c)(1)(C) (West 2012) (court shall add 20-year term to

- 3 -

sentence for attempted murder where defendant personally discharged firearm); 730 ILCS 5/5-8-4(d)(1) (West 2012) (court shall impose consecutive sentences where defendant convicted of first degree murder). Thus, Decatur cannot challenge those portions of his sentence for an abuse of discretion. *Peoples*, 2015 IL App (1st) 121717, ¶ 114.

¶ 14    As for the remainder of his sentence, Decatur does not dispute that it was within the statutory range. The sentencing range for first degree murder, absent any enhancements, is 20 to 60 years' imprisonment (730 ILCS 5/5-4.5-20(a) (West 2012)), while the range for attempted murder, a Class X felony, is 6 to 30 years (720 ILCS 5/8-4(c)(1)(C) (West 2012); 730 ILCS 5/5-4.5-25(a) (West 2012)). The trial court's sentence of 40 years' imprisonment on the murder count and 20 years on the attempted murder counts is within the middle of both ranges. And with regard to the mandatory firearm enhancement for first degree murder, the court sentenced Decatur to the minimum 25 years for personally discharging the gun that caused Maurice's death. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2012) (court shall impose additional sentence ranging from 25 years' imprisonment to life where defendant discharges a gun that results in death of another individual).

¶ 15    We cannot conclude that the sentence imposed was an abuse of discretion given the seriousness of the offense. While Decatur argued that he acted in self-defense, the trial court was not required to accept his version of events and in fact found Decatur incredible. The State's evidence, which Decatur concedes was sufficient, revealed that there was no justification for Decatur's acts: during a fight at which he was the only person armed, he shot at Milton, an unconscious man, and shot at and killed Maurice, who was not involved in the altercation. To compound matters, he fled after committing the crimes, and lied to police about his involvement. Also troubling was Decatur's lack of remorse: the trial court explicitly noted Decatur's inattention during the reading of the victim impact statement. Under these circumstances, the trial court did not abuse its discretion in declining to sentence Decatur to the minimum term he sought.

¶ 16    Nevertheless, Decatur argues that his 105 year sentence was excessive because the court failed to consider mitigating factors–most notably, his age and his minimal criminal record. But the trial court is not required by law to consider a defendant's age in making a sentencing decision. *Cf.* 730 ILCS 5/5-5-3.1 (West 2012) (listing factors to be considered in mitigation); see *People v. Luna*, 409 Ill. App. 3d 45, 52 (2011) (rejecting defendant's challenge to maximum sentence despite trial court's refusal to consider defendant's age at time of crime). True, the Supreme Court has recognized that minors are less morally culpable and have a greater capacity for rehabilitation than adults who commit similar crimes, but the Court has also stated that the Constitution does not categorically bar lengthy terms for juveniles. *Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2469 (2012); see also *People v. Davis*, 2014 IL 115595, ¶ 43 ("A minor may still be sentenced to natural life imprisonment without parole so long as the sentence is at the trial court's discretion rather than mandatory."). But, Decatur was not a minor when he committed these offenses and no reported authority holds that an adult defendant's relative youth, standing alone, renders a sentence longer than the statutory minimum excessive. And while Decatur's criminal history was minimal, consisting of one drug-related conviction, the court was nevertheless entitled to conclude that the heinous nature of Decatur's crimes offset that mitigating factor. As such, the court was within its discretion to reject the argument that Decatur was entitled to a minimum sentence.

¶ 17　　Decatur also contends that the court failed to take into account the financial costs of incarceration. See 730 ILCS 5/5-4-1(a)(3) (West 2012). It is sufficient to note that nothing in the record points to the trial court's refusal to consider this factor, and that absent such affirmative evidence, the trial court is presumed to consider the incarceration cost. *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 24; see also *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46 (trial court need not explicitly analyze every relevant sentencing factor on record).

¶ 18　　While we disagree that Decatur's sentence was excessive, we acknowledge that the convergence of two mandatory firearm enhancements, mandatory consecutive sentencing, and so called "truth-in-sentencing" laws that require Decatur to serve 100% of his murder sentence have produced a *de facto* life sentence. See 730 ILCS 5/3-6-3(a)(2)(i) (West 2012); *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 61 (term of years may amount to natural life without possibility of parole for purposes of eighth amendment (citing U.S. Const., amend. VIII)). We have previously urged the legislature to revisit the sentencing schemes that result in such lengthy imprisonment terms without allowing for adequate consideration of mitigating factors such as age. *Gipson*, 2015 IL App (1st) 122451, ¶¶ 78, 80 (mentally ill minor defendant sentenced to mandatory 52-year term for two counts of attempted murder). In response, the legislature has passed legislation aimed at providing trial courts with greater discretion in sentencing, particularly where juveniles are concerned. See, *e.g.*, Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105) (when sentencing defendant who was under 18 at time of commission of crime, court may, in certain circumstances, decline to impose sentencing enhancement based on firearm possession or discharge). We encourage the legislature to continue to improve upon our sentencing schemes to the extent necessary and ensure that they are reasonable and conform to common sense.

¶ 19　　Finally, as the State points out, the mittimus incorrectly reflects two convictions for first degree murder although there was only one victim. The State further notes, and we agree, that judgment should be entered on the more serious charge. *People v. Cardona*, 158 Ill. 2d 403, 411 (1994). Thus, pursuant to our authority under Illinois Supreme Court Rule 615(b)(1), we instruct the clerk of the circuit court to correct Decatur's mittimus to reflect one conviction of first degree murder under section 9-1(a)(1) of the Criminal Code of 2012. 720 ILCS 5/9-1(a)(1) (West 2012).

¶ 20　　　　　　　　　　　　　　　　CONCLUSION

¶ 21　　Accordingly, the judgment of the circuit court is affirmed and the mittimus is corrected.

¶ 22　　Affirmed; mittimus corrected.